IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY | : : : | CIVIL ACTION NO. 10-117 |
| v. | : : | |
| AECOM USA, INC. | : : : | |
| v. | : : | |
| UCI, INC., et al. | : | |

O'NEILL, J.                                                                   NOVEMBER 19, 2010

## MEMORANDUM

Plaintiff Southeastern Pennsylvania Transportation Authority sued defendant AECOM USA, Inc. for "failing to perform its duties" as the architect and engineer for SEPTA's Market Street elevated reconstruction project. AECOM then filed a third party complaint against Gannett Fleming, Inc., Chilton Engineering, Inc., UCI Architects, Inc. and Ang Associates, Inc. The third party defendants also filed crossclaims against each other. Presently under consideration are UCI's motion to dismiss AECOM's third party complaint against it and UCI's motions to dismiss the crossclaims against it.[1]

---

[1] Presently before me are: SEPTA's complaint (Doc. No. 1 - 1); AECOM's third party complaint (Doc. No. 14); UCI's motion to dismiss the third party complaint (Doc. No. 20); AECOM's response (Doc. No. 27); UCI's reply (Doc. No. 28); AECOM's sur reply (Doc. No. 33); AECOM's supplemental briefing (Doc. No. 64); UCI's response to AECOM's supplemental briefing (Doc. No. 65); AECOM's reply to UCI' response to AECOM's supplemental briefing (Doc. No. 68); UCI's motion to dismiss Chilton's crossclaim (Doc. No. 37); Chilton's response thereto (Doc. No. 45); UCI's motion to dismiss Ang's crossclaim (Doc. No. 38); Ang's response thereto (Doc. No. 43); UCI's motion to dismiss Gannet's crossclaim (Doc. No. 52); and Gannett's response thereto (Doc. No. 61). I heard oral argument on these motions on October 13, 2010. Following oral argument, the parties attempted to resolve the present dispute without judicial intervention. They have informed me, however, that such discussions were unsuccessful.

BACKGROUND

In early 1996, SEPTA set out to renovate the west end of the nearly one hundred year old Market Street elevated rail line. On January 3, 1996, SEPTA retained AECOM to provide architectural and engineering services for the project. AECOM's obligations to SEPTA were set forth with great specificity in the contract.

The project was divided into three phases. Phase A-1 was designated "Engineering and Alternative Analysis Phase;" phase A-2 was designated "Final Engineering/Design;" and phase B was designated "Construction Support Services." Compl. ¶ 52(c). Each phase required AECOM to provide specific services. AECOM hired, inter alia, four subcontractors to assist with the project. Gannett Fleming was hired to "provide[] design and other professional engineering services to AECOM in furtherance of AECOM's work for the project." Third Party Compl. ¶ 20. Chilton was hired "to perform a field survey and additional professional survey services for the [p]roject." Id. at ¶ 34. Ang was hired "to perform all electrical, mechanical and plumbing engineering design and related services necessary on the Stations Phase of the . . . project." Id. at ¶ 63. Finally, UCI was hired "to provide all technical design services for the architectural discipline of the [p]roject." Id. at ¶ 48. Such services included providing AECOM with "drawings, designs, details, specifications, related documents [and] responses to requests for information." Id. at 51. All four subcontractors agreed to indemnify AECOM for any loss arising out of the subcontractor's "performance of the contract." Id. at ¶ 30 (Gannett Fleming indemnity clause); ¶ 45 (Chilton indemnity clause); ¶ 60 (UCI indemnity clause); ¶ 76 (Ang indemnity clause). There is no allegation, however, that the subcontractors agreed to indemnify each other.

SEPTA alleges that AECOM's "design deficiencies and omissions," delayed the project substantially and resulted in significantly increased costs. The alleged design deficiencies attributable to AECOM included: "survey errors, defects related to guideway deck width, incorrect structural steel camber, errors in the rail profile, relocation of the third rail, design errors in fixation of fasteners, plinth redesign and errors in design of reinforcing steel." Compl ¶ 1.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). The Court of Appeals has recently made clear that after Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must

3

now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949). The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal: "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 210-11 (quoting Iqbal, 129 S. Ct. at 1950). The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id. (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949.

The Court of Appeals and several district courts have noted that the pleading standards set forth in Twombley and Iqbal apply with equal force to crossclaims, counterclaims and third party complaints. See Travelers Indem. Co. v. Dammann & Co., Inc., 594 F.3d 238, 256 n.13 (3d Cir. 2010) (applying the Iqbal pleading standard to crossclaims); Rocheux Intern. of N.J., Inc. v. U.S. Merch. Fin. Gr., Inc., —F. Supp. 2d—, 2010 WL 3833733, at *6 (D.N.J. Sep. 29, 2010) (noting that Iqbal and Twombley apply to counterclaims); Simon Prop. Gr., Inc. v. Palombaro, 682 F. Supp. 2d 508, 511 (W.D. Pa. 2010) (same); Miami Valley Fair Housing Ctr. v. Steiner & Assocs., Inc., No. 08-00150, 2010 WL 2631110, at *7 (May 13, 2010) (applying Twombley and Iqbal to third party complaint); Colon v. Blades, —F.R.D.—, 2010 WL 1731666, at *2 (D.P.R.

Apr. 29, 2010) (same); Mottley v. Maxim Crane Works, L.P., No. 06-78, 2010 WL 1284433, at *2 (D.V.I. Mar 26, 2010) (Bartle, C.J.) (same); Source One Global Partners, LLC v. KGK Synergize, Inc., No. 08-7403, 2009 WL 2192791, at *2 (N.D. Ill. July 21, 2009) (same).

DISCUSSION

I.    UCI's Motion To Dismiss AECOM's Third Party Complaint Will Be Denied

UCI has moved to dismiss AECOM's third party complaint for failure to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6). UCI argues that neither AECOM's third party complaint nor SEPTA's complaint "make[s] any allegations that the architectural design services performed in the [project] were performed negligently." See UCI's Br. at 7 (Doc. No. 20). AECOM disagrees for two reasons. First, it argues that its third party complaint, when read in combination with SEPTA's complaint, alleges sufficient facts to satisfy the requirements of Twombley and Iqbal. Second, it argues that it should not be required to plead more facts in the third party complaint because in order to do so it would be required to admit liability to SEPTA. See AECOM's Br. at 10 (Doc. No. 27).

The third party complaint alleges that "UCI provided architectural services to AECOM [including] drawings, designs, details, specifications, and related documents . . . ." Third Party Compl. ¶¶ 50-51 (hereinafter "architectural services").[2] Therefore, if the third party complaint alleges sufficient facts to set forth a plausible claim that the architectural services were legally deficient,[3] the third party complaint must not be dismissed.

---

[2]    UCI's brief in support of its motion to dismiss characterizes its services as "architectural design services." UCI's Br. at 8.

[3]    I use the term "legally deficient" to encompass both forms of culpable conduct alleged in the complaint–breach of contract and professional negligence.

5

The third party complaint itself does not allege any facts that allow me to conclude that UCI provided architectural services in such a way as to render it liable to AECOM. Instead, it simply asserts that "[i]f SEPTA can establish that AECOM is liable to it based on information provided to AECOM by UCI, then UCI is liable to AECOM for negligent misrepresentation." See Third Party Compl. ¶ 56. Likewise, "[i]f SEPTA can establish that AECOM is liable to it based on information provided to AECOM by UCI or on delay caused by UCI, then UCI breached the subcontract with AECOM." Id. at ¶ 57. Finally, with respect to AECOM's negligence claim, "[i]f SEPTA can establish that AECOM is liable to it based on information provided to AECOM by UCI, then UCI is liable to AECOM for negligence." Id. at ¶ 58. In addition to the allegations contained in the third party complaint, AECOM has adopted by reference the allegations in the original complaint. As a result, I must review the original complaint to determine whether any allegations therein would give rise to liability for architectural services.

My review of the original complaint reveals sufficient allegations of legally deficient architectural services to support AECOM's claim against UCI. In the first paragraph of the original complaint, SEPTA alleges that "AECOM's design deficiencies and omissions" caused significant damages. Compl. ¶ 1. Later in its complaint, SEPTA makes more specific allegations. In paragraph 87, for example, SEPTA alleges that eight of the sixteen "guideway structural steel girders [] shown on the Cobbs Creek drawings" had been fabricated with incorrect "dead load cambers." Compl. ¶ 87. Several paragraphs later, SEPTA alleges that "[d]esign errors were the reason for this problem." Compl. ¶ 91. Design errors are fairly attributable to UCI. Third Party Compl. ¶ 50-51.

6

The design errors alleged in the complaint were not limited to complications surrounding the Steel Girders. SEPTA's complaint alleges that the Cobbs Creek "guideway deck" was designed so narrowly that an inbound train would "collide with the side concrete wall." Compl. ¶ 97. Similarly, when the rails were fastened to concrete plinths, the concrete cracked as the bolts were tightened. The cracking was due to a "design error related to improper specification of the fastener torquing values and inadequate edge distance for the direct fixation fastener inserts." Compl. ¶ 108. When SEPTA asked AECOM to prepare plans for relocating "the third rail from beneath the 63rd Street Station [p]latform . . . to the centerline of the guideway," see Compl. ¶ 118, AECOM did not provide the "revised third rail drawings" in a timely fashion. Compl. ¶ 122. When it did forward the requested drawings, SEPTA was forced to incur additional costs to "correct [] design inadequacies." Compl. ¶ 124. Each of these problems is fairly attributable to negligent drawings, designs, details or specifications–aspects of the project for which, according to AECOM's third party complaint, UCI was responsible. Third Party Compl. ¶ 50-51. Indeed, the complaint is replete with other examples of legally deficient architectural services. See Compl. ¶¶ 127-132 (alleging rail elevation discrepancies resulting from "design errors"); ¶¶ 133-139 (alleging that the proposed used of grouting to affix fasteners presented a "design problem"); ¶¶ 140-145 (alleging that design errors caused "reinforcing steel" not to fit in "precast deck segments"); ¶¶ 146-154 (alleging that "foundation changes" were necessitated by AECOM's "design errors and omissions").

There is no question that the third party complaint, when considered in combination with

7

the original complaint, alleges conduct that is fairly attributable to UCI.[4] Therefore, AECOM's complaint pleads a plausible claim for relief. I will accordingly deny UCI's motion to dismiss.[5]

II. UCI's Motion to Dismiss Based on AECOM's Alleged Failure To Obtain a Certificate of Merit Will Be Denied

UCI also argues that AECOM's third party complaint against it should be dismissed because AECOM has not obtained a certificate of merit in support of its claims. Rule 1042.3 of the Pennsylvania Rules of Civil Procedure provides:

> (a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either
>
> A. an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>
> B. the claim that the defendant deviated from an acceptable professional standard is based solely on

---

[4] UCI also notes in its brief that SEPTA's original complaint against AECOM contained no reference to UCI. See, e.g, UCI's Br. at 8 ("there is not a single reference [in the original complaint] to UCI . . . ."). The fact that SEPTA did not name UCI in its complaint is inconsequential, however, because the third party complaint clearly alleges that the culpable conduct alleged in the complaint was attributable to UCI. The critical question for the purposes of my consideration of this motion, then, is whether the allegations in the original complaint and the third party complaint suffice to state a claim against UCI. As discussed more fully supra, I hold that they do.

[5] As a result of my finding that the allegations in the two complaints are sufficient to state a claim against UCI, I need not consider AECOM's alternative argument that in order to plead more facts it might need to admit liability to SEPTA.

8

>> allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>
> C. expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

The Rule also requires that "[a] separate certificate of merit shall be filed as to each licensed professional against whom a claim is asserted." Pa. R. Civ. P. 1042.3(b)(1). However, "a defendant . . . who has joined a licensed professional as an additional defendant . . . need not file a certificate of merit unless the joinder or cross-claim is based on acts of negligence that are unrelated to the acts of negligence that are the basis for the claim against the joining or cross-claiming party."[6] Id. at 1042.3(c)(2). "The goal of the certificate of merit is to weed out clearly non-meritorious lawsuits early in the litigation process." Warren v. Folk, 886 A.2d 305, 307 (Pa. Super. Ct. 2005).

SEPTA filed a certificate of merit along with its complaint against AECOM. Therein, counsel for SEPTA certified that "an appropriate licensed professional, has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by defendant AECOM . . . in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm suffered by SEPTA." See SEPTA's Certificate of Merit. AECOM has not filed any additional certificates of merit in pursuing its claims against UCI and

---

[6] Courts have held that a federal district court exercising diversity jurisdiction must apply Rule 1042.3 because it is substantive law of the Commonwealth of Pennsylvania. See Ramos v. Quien, 631 F. Supp. 2d 601, 611 (E.D. Pa. 2008) (citing Iwanejko v. Cohen & Grigsby, P.C., 249 F. App'x 938, 944 (3d Cir. 2007); Stroud v. Abington Mem'l. Hosp., 546 F. Supp. 2d 238, 248 (E.D. Pa. 2008)).

9

the other third party defendants. The question, then, is whether the acts of negligence alleged in the third party complaint are unrelated to the acts of negligence alleged in the original complaint. See id. If so, AECOM must file a separate certificate of merit in support of its claims against the third party defendants. See id. at 1042.3(b)(1).

I find that the acts of negligence alleged in the third party complaint are related to the acts of negligence alleged in the original complaint and therefore that it is unnecessary for AECOM to file an additional certificate of merit. Indeed, review of the two complaints reveals that the acts of negligence alleged in the third party complaint are the very same acts of negligence alleged in the original complaint. Both complaints allege that SEPTA was injured as a result of, inter alia, design deficiencies. The only real difference between the two is that the original complaint alleges that the negligent acts are attributable to AECOM and the third party complaint alleges that the negligent acts are attributable to UCI and the other third party defendants. It is thus impossible to conclude that the acts of negligence alleged in the third party complaint are unrelated to the acts of negligence alleged in the original complaint.

Additionally, according to the allegations in the complaints, AECOM and UCI provide similar services. The original complaint identifies AECOM as "the Architect/Design Engineer" for the project. See Compl. ¶ 3. AECOM's third party complaint, in turn, alleges that "UCI provided architectural services to AECOM in furtherance of AECOM's work for the project" and that "[i]n providing such information, UCI, as a design professional, knew that AECOM and others, including SEPTA, would rely on the information furnished by UCI." See Third Party Compl. ¶¶ 50, 52. As a result of the fact that both AECOM and UCI provide architectural and design services, a certification that AECOM provided professionally deficient services is

sufficient, through the application of Rule 1042.3(c)(2), to satisfy Rule 1042.3(a)(1) as to UCI. Accordingly, I will deny UCI's motion to dismiss for failure to obtain a certificate of merit.

III. UCI's Motions To Dismiss the Crossclaims Against It Will Be Granted in Part and Denied in Part

UCI also moves to dismiss the crossclaims filed against it by Gannett, Chilton and Ang. All three motions and supporting briefs are substantively identical. Gannet, Chilton and Ang have all filed responses.

The bases of each of the three crossclaims are the same. Gannet, Chilton and Ang allege that UCI is liable to them under principles of indemnity and contribution. UCI, in its motions to dismiss the crossclaims against it, argues that the crossclaims do not allege sufficient facts to satisfy the requirements of Iqbal and Twombley. See Travelers Indem. Co., 594 F.3d at 256 n.13 (applying Iqbal pleading standard to crossclaims). I will discuss the viability of the indemnification crossclaims and contribution crossclaims separately.[7]

A. None of the Crossclaims Allege Sufficient Facts To Support a Claim for Indemnification

The right to be indemnified for a judgment can arise either through the operation of an express contractual provision or by means of the common law. "The right to [common law] indemnity arises by operation of law and will be allowed where necessary to prevent an unjust result. It is [an] equitable remedy that shifts the entire responsibility for damages from a party who, without any fault, has been required to pay because of a legal relationship to the party at fault." City of Wilkes Barre v. Kaminski Bros., Inc., 804 A.2d 89, 92 (Pa. Commw. Ct. 2002).

---

[7] Each of the three crossclaims contains substantially the same allegations with respect to the contribution and indemnity claims against UCI.

Review of the crossclaims in conjunction with the original complaint and the third party complaint reveals no factual basis for the indemnification claims.[8] None of the crossclaimaints has alleged that it entered into an indemnification contract with UCI. Nor has any of the crossclaimaints alleged any set of facts that would trigger common law indemnity. See Mottley, 2010 WL 1284433, at *1 (noting that the existence of respondeat superior would trigger common law indemnity). I will therefore grant UCI's motion and dismiss Ang's, Chilton's and Gannet Fleming's indemnity crossclaims.

> B. Each of the Crossclaims Alleges Sufficient Facts To Support a Claim for Contribution

"Contribution is a fault-sharing mechanism between two parties responsible for a harm." Agere Sys., Inc. v. Advanced Env't Tech. Corp., 552 F. Supp. 2d 515, 520 (E.D. Pa. 2008) (citing Kemper Nat'l P & C Cos. v. Smith, 615 A.2d 372, 375 (Pa. Super. Ct. 1992)). "Contribution is not a recovery for the tort [committed against the plaintiff,] but the enforcement of an equitable duty to share liability for the wrong done." Svetz for Swetz v. Land Tool Co., 513 A.2d 403, 407 (Pa. Super. Ct. 1986). The right to contribution, established in Pennsylvania by 42 Pa. Cons. Stat. Ann. § 8324, exists where there are joint tortfeasors and "one of the tortfeasors has paid more than his or her pro rata share of the common liability." Pennsylvania Nat. Mut. Cas. Ins. Co. v. Nicholson Const. Co., 542 A.2d 123, 125 (Pa. Super. Ct. 1988). To be joint tortfeasors, "parties must either act together in committing a wrong, or their acts, if independent of each other, must unite in causing a single injury." Lasprogata v. Qualls, 397 A.2d

---

[8] I review the crossclaims in conjunction with the original complaint and the third party complaint because the crossclaims adopt by reference the allegations in the third party complaint which, in turn, adopts by reference the allegations in the original complaint.

803, 806 n.4 (Pa. Super. Ct. 1979). "The right of contribution may be asserted during the original proceeding . . . , via joinder of the additional defendants . . . or it may be pursued in a separate action by an original defendant who has previously been held liable to the original plaintiff." Bianculli v. Turner Const. Co., 640 A.2d 461, 465 (Pa. Super. Ct. 1994).

Review of the crossclaims in conjunction with the original and third party complaints reveals that together those pleadings contain sufficient allegations to support Ang's, Chilton's and Gannett Fleming's crossclaims for contribution. The only significant question is whether the third party defendants are "joint tortfeasors" and therefore subject to claims for contribution. Although at this early stage it is impossible to determine whether the negligence of the third party defendants in combination caused every aspect of AECOM's injury, the allegations in the third party complaint render it plausible that their negligent acts combined to cause at least some part of AECOM's injury.[9] I will therefore deny UCI's motion to dismiss the contribution crossclaims against it.

An appropriate Order follows.

---

[9] I have held supra that the third party complaint alleged sufficient facts to state a claim against UCI. I need not undertake a similar analysis of whether the third party complaint states a claim against Ang, Chilton and Gannet Fleming because none of those parties have filed motions to dismiss the third party complaint; each have filed an answer.